## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| CONN CREDIT I, LP, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 1:14-cv-00429 |
| | § | |
| v. | § | |
| | § | Judge Ron Clark |
| TF LOANCO III, LLC, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendant. | § | |

## DEFENDANT TF LOANCO III, LLC'S FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES, AND ORIGINAL COUNTERCLAIMS

Defendant TF LoanCo III, LLC ("TFLoanCo") files this First Amended Answer and Affirmative Defenses, and Original Counterclaims in response to Plaintiff Conn Credit I, LP's ("Conn") First Amended Complaint [Dkt. 5, referred to herein as the "Complaint"], and pursuant to the Federal Rules of Civil Procedure respectfully shows the Court as follows:

## FIRST AMENDED ANSWER

### PARTIES

1.      TFLoanCo admits the allegations contained in Paragraph 1 of the Complaint.

2.      TFLoanCo admits the allegations contained in the first sentence of Paragraph 2 of the Complaint.  TFLoanCo denies the allegations contained in the second sentence of Paragraph 2 of the Complaint.  TFLoanCo admits the allegations contained the third sentence of Paragraph 2 of the Complaint.  TFLoanCo denies the allegations contained in the fourth sentence of Paragraph 2 of the Complaint.

### JURISDICTION

3.      TFLoanCo admits the allegations contained in Paragraph 3 of the Complaint.

4.      TFLoanCo denies the allegations contained in the first sentence of Paragraph 4 of

2705210.1

the Complaint.  TFLoanCo admits in part and denies in part the allegations contained in the second sentence of Paragraph 4 of the Complaint.  TFLoanCo admits it unconditionally and irrevocably consented to personal jurisdiction in the State of Texas, but it denies venue is proper in the United States District Court for the Eastern District of Texas.

VENUE

5.     TFLoanCo denies the allegations contained in Paragraph 5 of the Complaint.

BACKGROUND FACTS

6.     TFLoanCo lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6 of the Complaint.

7.     TFLoanCo lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7 of the Complaint.

8.     TFLoanCo lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in the first two sentences of Paragraph 8 of the Complaint. TFLoanCo admits the allegations contained in the last two sentences of Paragraph 8 of the Complaint.

9.     TFLoanCo is not required to admit or deny Paragraph 9 of the Complaint because it was left blank.

10.     TFLoanCo's denies the allegations contained in Paragraph 10 of the Complaint.

11.     TFLoanCo admits the allegations contained in the first five sentences of Paragraph 11 of the Complaint.  TFLoanCo denies the allegation contained the last two sentences of Paragraph 11 of the Complaint.

12.     TFLoanCo admits the allegations contained in Paragraph 12 of the Complaint.

2

TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA.

13.     TFLoanCo denies the allegations contained in Paragraph 13 of the Complaint. TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA.

14.     TFLoanCo denies the allegations contained in Paragraph 14 of the Complaint. TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA.

### CAUSES OF ACTION – BREACH OF CONTRACT

15.      In response to the first sentence of Paragraph 15 of the Complaint, TFLoanCo repeats the denials and admissions contained in all preceding paragraphs.  TFLoanCo denies the allegations contained in the remaining sentences of Paragraph 15 of the Complaint.  TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA.

16.      TFLoanCo denies the allegations contained in Paragraph 16 of the Complaint. TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA.

### CAUSE OF ACTION – ATTORNEYS' FEES

17.      In response to the first sentence of Paragraph 17 of the Complaint, TFLoanCo repeats the denials and admissions contained in all preceding paragraphs.  TFLoanCo denies the allegations contained in the remaining sentences of Paragraph 17 of the Complaint.

18.     TFLoanCo denies the allegations contained in Paragraph 18 of the Complaint.

19.     TFLoanCo denies the allegations contained in Paragraph 19 of the Complaint. TFLoanCo was not obligated to close on August 28, 2014, because of Conn's prior material breaches of the PSA and failure of the conditions precedent outlined in Section 10.2 of the PSA. Furthermore, Conn has not presented its claim in accordance with Chapter 38 of the Texas Civil Practice and Remedies Code.  Moreover, Conn cannot recover attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code because TFLoanCo is a limited liability company.

**PRAYER**

20.     TFLoanCo denies Conn is entitled to the relief requested in the "Prayer" of the Complaint.

**FIRST AMENDED AFFIRMATIVE DEFENSES**

1.     TFLoanCo was not obligated to close under the PSA on August 28, 2014, or anytime thereafter, and was excused from performance, because of Conn's prior material breaches of the PSA as outlined below in TFLoanCo's counterclaims.

2.     TFLoanCo was not obligated to close under the PSA on August 28, 2014, or anytime thereafter, and was excused from performance, because the conditions precedent outlined in Section 10.2 of the PSA failed.  Section 10.2 of the PSA states:

> The Seller and the Buyer will be obligated to transfer Accounts on a Closing Date only if (i) the representations and warranties of the Buyer and Seller, respectively, in this Agreement are true and correct as of such Closing Date; and (ii) the Buyer or the Seller, respectively, has complied in all material respects with any obligation to be performed by it on or prior to such Closing Date.

As outlined below in TFLoanCo's counterclaims, as of the August 28, 2014 Closing Date under the PSA for Deliveries 3, 4, 5, and 6, (i) Conn's representations and warranties in the PSA were

4

not true and correct, and (ii) Conn had not materially complied with its obligations under, and was in breach of, the PSA.

3.      TFLoanCo was not obligated to close under the PSA on August 28, 2014, or anytime thereafter, and was excused from performance, because of Conn's fraud as outlined below in TFLoanCo's counterclaims.

4.      TFLoanCo was not obligated to close under the PSA on August 28, 2014, or anytime thereafter, and was excused from performance, because Conn failed to provide further assurances to TFLoanCo as required by Section 13.16 of the PSA, and as further outlined below in TFLoanCo's counterclaims.

5.      Conn failed to mitigate its alleged damages.

## ORIGINAL COUNTERCLAIMS

### PARTIES

1.      Plaintiff/Counter-Defendant Conn is Texas limited partnership with its principal place of business in The Woodlands, Montgomery County, Texas.

2.      Defendant/Counter-Plaintiff TFLoanCo is a Florida limited liability company with its principal place of business in Orlando, Florida.

### JURISDICTION AND VENUE

3.      TFLoanCo agrees personal jurisdiction is proper in the State of Texas because Conn is subject to personal jurisdiction in the State of Texas, and TFLoanCo unconditionally and irrevocably consented to personal jurisdiction in the State of Texas.  TFLoanCo also agrees federal court subject matter (diversity) jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because this is a civil action where the amount in controversy exceeds $75,000 and is between citizens of

5

different States.  However, TFLoanCo continues to deny venue is proper in the United States

District Court for the Eastern District of Texas under 28 U.S.C. § 1391.  *See Atlantic Marine*

*Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568,

(2013).  Although the Court denied TFLoanCo's Motion to Dismiss for Improper Venue, and

Alternatively, to Transfer Venue [Dkt. 12], TFLoanCo files these counterclaims and expressly

reserves it rights to appeal the Court's Memorandum Order [Dkt. 24].

### FACTUAL BASES FOR DEFENDANT'S COUNTERCLAIMS

A.      <u>General Background</u>

4.      On or about April 30, 2014, TFLoanCo and Conn entered into a Purchase and Sale

Agreement (the "PSA").  The PSA set forth the parties' respective rights, duties, representations,

warranties, and obligations concerning Conn's sale, and TFLoanCo's purchase, of consumer loan

debt (i.e., consumer accounts) originated, serviced, and collected by Conn.

5.      Under the PSA, Conn was to sell, and TF LoanCo was to purchase, consumer

accounts pursuant to a Delivery Schedule.  The Delivery Schedule contemplated a total of thirteen

(13) deliveries of accounts from the date of the PSA through approximately January of 2015.  By

May 9, 2014, the parties had closed on the first three Deliveries (the Bulk Delivery, Delivery 1

and Delivery 2) scheduled under the PSA, wherein Conn sold 53,779 consumer accounts to

TFLoanCo for total payment to Conn in the amount of $6,426,666.73.

6.      On or about April 30, 2014, Conn executed a Bill of Sale and Assignment of

Accounts for the Bulk Delivery.  Pursuant to the PSA, Conn sold accounts to TFLoanCo under the

Bulk Delivery based on how each account was to be classified.  If an account was a "fresh charge-

off," TFLoanCo was obligated to purchase the account in an amount equal to 5.9427% of the

account's balance, net post-cutoff payments.  If the account was classified as a "judgment," TFLoanCo was obligated to purchase the account in an amount equal to 4.8407% of the account's balance, net post-cutoff payments.  And if the account was classified as a "dismissed bankruptcy," TFLoanCo was obligated to purchase the account in an amount equal to 9.7868% of the account's balance, also net post-cutoff payments.

7.      Under the Bulk Delivery, Conn sold and TFLoanCo purchased a total of 43,367 accounts for a total purchase price of $4,976,674.66.  Of the accounts sold in the Bulk Delivery, Conn classified 21,675 accounts as "fresh charge-offs," 9,249 accounts as "judgments," and 12,443 accounts as "dismissed bankruptcies."  In the Bill of Sale and Assignment of Accounts for the Bulk Delivery, and in the concomitant Settlement Statement, Conn represented the aggregate account balances for the 43,367 consumer accounts was $78,961,330.34 (which was the basis from which the purchase price was to be calculated), with net post-cutoff payments in the aggregate amount of $37,369.34.

8.      On or about May 9, 2014, Conn executed a Bill of Sale and Assignment of Accounts for Deliveries 1 and 2 under the Delivery Schedule of the PSA.  TFLoanCo was required to purchase all accounts ("fresh charge-offs") sold by Conn under Deliveries 1 and 2 in an amount equal to 7% of the account's balance, net any post-cutoff payments.

9.      Under Delivery 1, Conn sold and TFLoanCo purchased a total of 4,785 "fresh charge-off" accounts for a total purchase price of $651,387.29.  In the Bill of Sale and Assignment of Accounts for Delivery 1, and in the concomitant Settlement Statement, Conn represented the aggregate account balances for the 4,785 consumer accounts was $9,347,599.18 (which was the basis from which the purchase price was to be calculated), with net post-cutoff payments in the

7

aggregate amount of $2,944.65.

10.     Under Delivery 2, Conn sold and TFLoanCo purchased a total of 5,627 "fresh charge-off" accounts for a total purchase price of $798,604.78.  In the Bill of Sale and Assignment of Accounts for Delivery 2, and in the concomitant Settlement Statement, Conn represented the aggregate account balances for the 5,627 consumer accounts was $11,481,583.54 (which was the basis from which the purchase price was to be calculated), with net post-cutoff payments in the aggregate amount of $5,106.07.

11.     The next deliveries under the PSA (Deliveries 3, 4, 5, and 6) were scheduled to close on August 28, 2014.  However, TFLoanCo refused to close on August 28, 2014, because Conn had materially breached the PSA and engaged in fraudulent conduct as described below.

**B.      The "unearned RSA" issue and Conn's breach of its Article VIII representations and  warranties.**

12.     Conn made several representations and warranties in the PSA with respect to the 53,779 consumer accounts purchased by TFLoanCo that are materially false.  Among other things, Conn represented and warranted in the PSA that:

- Conn "complied with all laws, rules, regulations … to which it may be subject …" (PSA § 8.1);

- "[The PSA] and all of the obligations of [Conn] hereunder are the legal, valid and binding obligations of [Conn], enforceable in accordance with the terms of [the PSA] …" (PSA § 8.2);

- "The execution and delivery of [the PSA] and the performance of its obligations hereunder by [Conn] will not conflict with any provision of any law or regulation to which [Conn] is subject or conflict with or result in a breach of or constitute a default under any of the terms, conditions or provisions of any agreement or instrument to which [Conn] is a party or by which it is bound or any order or decree applicable to [Conn], or result in the violation of any law, rule, regulation, order, judgment or decree to which [Conn] or its property is subject." (PSA § 8.3);

8

- "The Accounts have been originated, serviced, and collected in accordance with all applicable law." (PSA § 8.5);

- "[E]ach Account represents the valid, enforceable, legal and binding obligation of each Obligor …." (PSA § 8.6);

- "The information included in the applicable Computer File as of the date the Computer Files are transferred are materially accurate …" (PSA § 8.7); and

- "Account Documents provided pursuant to Section 3.2 are accurate in all material respects." (PSA § 8.9).

13.     All of these representations proved to be materially false based on Conn's practices and breaches with respect to Conn charging-off consumer debt but failing to credit back to the consumer's debt at the time of charge-off the amount of unearned/unused repair service/extended warranty agreements financed by the consumer.

14.     When a consumer makes a purchase at a Conn store, Conn often sells to the consumer a repair service/extended warranty agreement (referred to as an "RSA") in addition to the manufacturer's warranty that typically comes with the purchase of a consumer good.  A consumer who finances his/her purchase on credit with Conn will also wrap the cost of the RSA into the financing.

15.     Conn has admitted that **"[a]t the time of charge off, the Repair Service Agreement is cancelled."**  Accordingly, when a consumer defaults and fails to pay for the goods he/she purchased, Conn cancels the RSA.  Conn's practice of cancelling the RSA when a consumer defaults is not the problem.

16.     The problem is how Conn accounts for the unearned/unused portion of the RSA at the time of charge-off.  In its contracts with consumers, Conn agrees that upon cancellation of a RSA, it will rebate/refund any unearned/unused portions thereof by crediting such amounts back

9

to the defaulted account.   Moreover, under all applicable laws, including the Texas Service Contract Regulatory Act, TEXAS OCCUPATIONS CODE § 1304.001 et seq., (the "TSCRA"), consumers who purchase an RSA are entitled to a prorated refunded credited back to their account when the RSA is cancelled.

17.     However, contrary to its agreements with consumers and contrary to all applicable laws, including the TSCRA, Conn categorically did not rebate/refund any unearned/unused portion of the RSA at the time a consumer's account was charged off.   Conn has even admitted that the RSA "**is NOT rebated/refunded for any unearned/unused time period at the time of charge off.**"

18.     The vast majority of the 53,779 accounts sold to TFLoanCo under the PSA (and upon information and belief, the vast majority, if not all, of the accounts Conn contends TFLoanCo should have purchased on August 28, 2014) are affected by the unearned RSA issue and Conn's improper practices, i.e., Conn is engaged in a systematic practice whereby it does not refund/rebate any unearned/unused portion of a RSA to consumers at the time of charge off.   This practice violates Conn's contracts with its consumers and all applicable laws, including the TSCRA and similar state laws.

19.     Conn's practices have resulted in major, material breaches of the PSA.

20.     First, when Conn reported the alleged account balances to TFLoanCo in the Bill of Sale and Assignment of Accounts for the Bulk Delivery, Delivery 1, and Delivery 2, the account balances were inflated.   As a result, TFLoanCo overpaid Conn for the accounts.

21.     Second, and more importantly, because Conn sold TFLoanCo accounts that do not accurately and legally reflect the true and correct balances due and owing by consumers, any

10

attempts by TFLoanCo to collect such amounts could potentially run afoul of the federal Fair Debt Collection Practices Act (the "FDCPA"), and all similar state laws that may apply to each account. Generally, the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. Specifically, a violation of Section 1692e can occur under circumstances where a debt collector misrepresents the "character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A). Accordingly, Conn has sold accounts to TFLoanCo that not only breach Conn's representations and warranties contained in Article VIII of the PSA, but also, TFLoanCo is in possession of accounts that it legally cannot even *attempt* to collect without potentially running afoul of federal and state debt collection laws because it does not know the true and correct amount due and owing on the accounts.

22.     Notwithstanding the foregoing, it was Conn, not TFLoanCo, that initiated this lawsuit seeking damages for TFLoanCo's failure to close on additional accounts under the PSA that were originated, serviced, and collected by Conn in violation of the law, and that breach Conn's representations and warranties contained in the PSA.  Not only did Conn's conduct and material breaches excuse TFLoanCo's future performance under the PSA, but it also entitles TFLoanCo to damages thereunder.

23.     The PSA is no doubt Conn's contract, and TFLoanCo had very little, if any, ability to change its terms.  In fact, on information and belief, Conn has used the PSA in numerous other transactions involving the sale of consumer debt.  The point is that Section 9.4 of the PSA (entitled, "Repurchase of Accounts as Exclusive Remedy") states that "[TFLoanCo] and [Conn] agree that, as to any breach by [Conn] of any of its representations or warranties in respect to any Account,

11

2705210.1

[TFLoanCo's] *sole and exclusive remedy for damages* other than third-party claims arising out of such breach shall be [Conn's] repurchase of such Account." (Emphasis added).  Despite demand, Conn has failed and refused to buy back the accounts.

### C.    Conn breached Section 3.2 of the PSA.

24.    The unearned RSA issue is not the only material breach of the PSA by Conn. Section 3.2 of the PSA required Conn to "provide all Account Documents in its possession to [TFLoanCo] with 30 days following the applicable Closing Date."  For numerous accounts sold to TFLoanCo in the Bulk Delivery and Deliveries 1 and 2, Conn never provided the requisite Account Documents despite TFLoanCo's demand.  Conn's breach of Section 3.2 excused TFLoanCo's obligation to purchase future deliveries under the PSA and entitles TFLoanCo to the sole and exclusive remedy agreed to by the parties in Section 9.4 of the PSA.

### D.    Conn breached Section 4.1 of the PSA.

25.    Conn has also breached Section 4.1 of the PSA by actively servicing the accounts sold to TFLoanCo.  Section 4.1 states that the accounts "shall be sold and conveyed to [TFLoanCo] on a servicing-released basis.  As of each Closing Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Accounts shall pass to TFLoanCo, and [Conn] shall be discharged from all servicing liability therefore."  Additionally, the Bill of Sale and Assignment of Accounts for the Bulk Delivery and Deliveries 1 and 2 expressly stated that Conn "hereby absolutely sells, transfers, assigns, sets-over and conveys to [TFLoanCo] … (a) all of [Conn's] right, title and interest in and to each of the Accounts … and (b) all principal, interest or other proceeds of any kind with respect to the Accounts …."  Nevertheless, Conn continued to actively service accounts after it sold them to TFLoanCo, in violation of the PSA and debt

12

collection laws.   Conn's breach excused TFLoanCo's future performance under the PSA and entitles TFLoanCo to the remedies under Section 9.4 thereof.

> **E.      Conn has refused to buy back all of the accounts falling under Sections 6.1 of the PSA, and has breached Sections 6.2 and 6.3 thereof.**

26.     Pursuant to Article VI of the PSA, Conn was obligated to buy back certain types of accounts sold to TFLoanCo.  Specifically, Section 6.1 requires Conn to "repurchase any Account to which any of the following conditions applies on or prior to the applicable Cutoff Date:"

> a.      death of all Obligors;
>
> b.      the filing of bankruptcy proceedings by all Obligors after the related account origination date without subsequent dismissal;
>
> c.      the Account was created as a result of fraud or forgery such that all Obligors have no liability for such Accounts;
>
> d.      the only remaining liable Obligor on the Account is a business entity and such business entity is defunct;
>
> e.      [Conn] received payment in full settlement of the Account (including but not limited to issuance of Form 1099C);
>
> f.      A claim has been made to [TFLoanCo] under the Fair and Accurate Credit Transactions Act (FACTA);
>
> g.      the Obligor has initiated litigation or is included in a certified or proposed class action lawsuit as an actual or proposed member of a class, and such litigation is against [Conn]; or
>
> h.      the Account is a duplicate record of any other Account being sold hereby.

27.      Numerous accounts sold by Conn to TFLoanCo fall under one of these categories. Despite demand, Conn refused to cooperate with TFLoanCo to provide relevant documents and information to allow TFLoanCo to identify whether an account falls within a Section 6.1 category. Conn further refused to repurchase accounts that fall within these categories and did not provide

13

an account-level response to TFLoanCo's notice as required under Section 6.2 of the PSA.  Every

step of the way, Conn has frustrated the purpose of Section 6.2 and 6.3 of the PSA and has refused

to deal fairly and in good faith with TFLoanCo to identify and repurchase accounts falling under

Section 6.1.

28.    Conn's breaches of Article VI of the PSA excused TFLoanCo from purchasing

future deliveries and performing under the PSA.  TFLoanCo is also entitled to damages as a result

of Conn's breaches pursuant to Sections 6.2 and 9.4 of the PSA.

**F.    Conn breached Section 13.16 of the PSA.**

29.    Section 13.16 of the PSA states that the "parties shall, upon the written request of

the other, execute and deliver to each other such reasonable and appropriate additional documents,

instruments, or agreements as may be reasonably necessary or appropriate to effectuate the

purposes of this Agreements."  As discussed in Section E, *supra*, TFLoanCo requested, among

other reasonable and appropriate documents, Conn's account notes for the accounts sold under the

Bulk Delivery and Deliveries 1 and 2.   Account notes include Conn's collection efforts,

conversations with consumers during the time Conn was seeking to collect on accounts, and other

data transcribed by Conn concerning a consumer's account and Conn's collection efforts.  Conn

refused to provide account notes or any other documents to assist TFLoanCo in dealing with all of

the numerous problems associated with the accounts, including the unearned RSA issue.

30.    Conn's failure to provide TFLoanCo with further assurances and cooperate with

TFLoanCo are breaches of Section 13.16, excused TFLoanCo's from performing under the PSA

on August 28, 2014, and entitle TFLoanCo to the damages and remedies outlined Section 9.4 of

the PSA.

14

## TFLoanCo's Counterclaims Against Conn

### Count I – Breach of Contract

31.　TFLoanCo repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

32.　Conn's actions, inactions, and conduct identified in the preceding paragraphs herein constitute material breaches of the PSA. In particular, Conn breached all of its representations and warranties contained in Article VIII, and breached its obligations contained in Sections 3.2, 4.1, 6.1, 6.2, 6.3, and 13.16 of the PSA. The various breaches alleged herein have caused TFLoanCo to suffer actual damages and entitle TFLoanCo to the "sole and exclusive remedy for damages" agreed to by the parties in Section 9.4 of the PSA, i.e., Conn's repurchase of the accounts.

### Count II – Fraud

33.　TFLoanCo repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

34.　Conn's made several representations in Article VIII of PSA as delineated in Paragraph 12, *supra*, of these counterclaims. Conn's representations and warranties contained in Article VIII of the PSA were material. TFLoanCo was not aware of the unearned RSA issue at the time the PSA was executed, and TFLoanCo would never have purchased accounts under the PSA had it known about Conn's practices and that such practices constituted a fraud on consumers purchasing a RSA and a breach of Conn's consumer agreements. Rather, TFLoanCo relied on Conn's representations and warranties contained in Article VIII of the PSA, but at the time Conn made its representations and warranties in the PSA, Conn knew those representations and warranties were false or made the representations and warranties recklessly, as positive assertions,

15

and without knowledge of its truth.  Conn was well-aware of its own practices and that it failed to credit back unearned/used amounts of an RSA to a consumers' debts at the time of charge off. Conn was also well-aware that such practices resulted in inflated consumer debt; that it was pawning off these illegal accounts to TFLoanCo and to other purchasers of Conn's accounts; that it was reporting inflated and false consumer debt amounts; that TFLoanCo was paying a higher price for the accounts based on the inflated and false amount of the consumers' debt balances; and that such practices were wholly inconsistent with the representations and warranties contained in Article VIII of the PSA. The representations and warranties contained in Article VIII of the PSA were specifically made by Conn with the intent that TFLoanCo act upon those representations, execute the PSA, and purchase 53,779 consumer accounts for total payment to Conn in the amount of  $6,426,666.73.   TFLoanCo justifiably relied on Conn's representations and warranties contained in Article VIII and acted accordingly.   As a result, Conn's misrepresentations have caused TFLoanCo actual damages.

35.     Moreover, Conn's fraudulent conduct was aggravated by the kind of willfulness, wantonness, malice and fraud for which the law allows the imposition of exemplary damages. Accordingly, TFLoanCo seeks an award of exemplary damages in an amount to be determined by the trier of fact.

### COUNT III – ATTORNEYS' FEES

36.     In Section 13.12 of the PSA, Conn and TFLoanCo agreed that "[i]n the event of litigation under [the PSA], the prevailing party shall be entitled to an award of attorneys' fees and costs."  TFLoanCo has employed the undersigned law firm and attorneys to represent it in this litigation and has agreed to pay them for their services.  Accordingly, TFLoanCo seeks to recover

16

all of its reasonable and necessary attorneys' fees and costs from Conn in this lawsuit, for both prevailing in its defense against Conn's claim for breach of contract, and for prevailing in its prosecution of these counterclaims.

## CONDITIONS PRECEDENT

37.     All conditions precedent to TFLoanCo's right to recover the amounts sought and pleaded for herein have been performed, have occurred, or have been waived by Conn.

## PRAYER

**WHEREFORE**, TFLoanCo respectfully requests that judgment be entered in his favor; that Conn take nothing by its claims and causes of action; that Conn's claims and causes of action be dismissed in their entirety with prejudice; and that TFLoanCo have and recover from Conn:

- all actual damages proved at trial;

- all liquidated damages;

- the relief, remedies, and damages provided for in Article VI and Section 9.4 of the PSA;

- pre-judgment interest accruing on the foregoing amounts at the maximum rate allowed by law;

- all of its attorneys' fees and costs as provided for in Section 13.12 of the PSA;

- exemplary damages in an amount to be determined by the trier of fact; and

- post-judgment interest accruing on all of the foregoing amounts at the maximum rate allowed by law.

TFLoanCo further prays for any such other and further relief, at law or in equity, that may be just and proper.

17

2705210.1

Date:   June 5, 2015                          /s/ *Michael A. Ackal, III*
                                              J. Cary Gray, Lead Attorney
                                              Texas State Bar No. 08322300
                                              E-mail: cgray@grayreed.com
                                              Michael A. Ackal, III
                                              Texas State Bar No. 24045367
                                              E-mail: mackal@grayreed.com
                                              Preston T. Kamin
                                              Texas State Bar No. 24062817
                                              E-mail: pkamin@grayreed.com
                                              GRAY REED & MCGRAW, P.C.
                                              1300 Post Oak Blvd., Suite 2000
                                              Houston, Texas 77056
                                              (713) 986-7000 (Telephone)
                                              (713) 986-7100 (Facsimile)

                                              ATTORNEYS FOR DEFENDANT
                                              TF LOANCO III, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 5, 2015, a true and correct copy of the foregoing document was served upon the following individuals via the Court's ECF system pursuant to Federal Rule of Civil Procedure 5(b)(3):

J. Thad Heartfield
M. Dru Montgomery
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706

                                              *Michael A. Ackal, III*
                                              Michael A. Ackal, III

18